**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00627-RM

Victoria Lynn Lopez

    Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,

    Defendant.

**ORDER**

### I.   PROCEDURAL HISTORY

Plaintiff Victoria Lopez (plaintiff), filed an application for Supplemental Security Income Benefits (SSI) on October 25, 2010, alleging disability caused by a ruptured disc in her lower back and severe asthma. (ECF No.11-5, pp. 132-39, 144). Plaintiff alleged a disability onset date of February 1, 2008. (ECF No.11-5, p.132).

Her claims were initially denied on April, 2011. (ECF No.11-3, pp.72-82). Plaintiff timely filed her request for an administrative hearing. (ECF No.11-4, pp.112-14). She was granted a hearing before an Administrative Law Judge (ALJ); she appeared, testified and was represented by an attorney at the video hearing held on September 20, 2011. (ECF No.11-2, pp.41-71).

The Administrative Law Judge (ALJ) denied plaintiff's application for SSI on December 29, 2011. (ECF No.11-2, pp.20-40). This denial became the Commissioner of Social Security's

1

(Commissioner) final decision on December 21, 2012, when the Appeals Council denied plaintiff's appeal of the ALJ's decision. (ECF 11-2, pp. 1-6).

Plaintiff now seeks review of that final decision. (ECF No.14).

## II   BACKGROUND

1. **Social:**

Plaintiff was born on October 21, 1975, and was 33 years old at the time of her alleged disability onset. (ECF 11-5, p.132). Plaintiff speaks, reads and communicates in English. (ECF 11-6, p. 143). She completed 8th grade, has had no special education classes and has had past employment as a food server in a fast food restaurant, a nurse's aide in a nursing home, a housekeeper in a hotel/resort; a sandwich artist in a sandwich shop and a cook for a school district. (ECF 11-6, p.145, 151).

2. **Medical:**

Wayne Callen, M.D., is plaintiff's primary care physician. (ECF No. 11-7, pp.199-204). On three separate occasions, plaintiff complained to Dr. Callen about back and/or sciatic pain. (ECF No. 11-7, pp.202, 204).

On the first visit on December 10, 2009, Dr. Callen noted that plaintiff reported sinus congestion and pain as well as pain down her right leg, and prescribed medication for the sinus infection and a vaporizer to steam her sinuses. (ECF No. 11, p.204). He referred plaintiff for an MRI of plaintiff's lumbar spine which was done on December 11, 2009. (ECF No. 11-7, pp.211-212). Dr. Herlihy interpreted the MRI, finding mild to moderate changes at L3-L4 and L4-L5 secondary to a small disc protrusion. (ECF No.11-7, p.212).

Plaintiff next complained of back pain four month later on April 15, 2010. (ECF No. 11-7, p.202). Examination showed that plaintiff's deep tendon reflexes were present, straight leg-raising was negative, and motor function of her lower extremities was "o.k." (ECF No. 11, p.202). Dr. Callen then

diagnosed right leg sciatica, prescribed medication for her pain and to decrease inflammation, and noted he intended to arrange a surgical consultation. *Id.*

Plaintiff last complained to Dr. Callen of low back/leg pain approximately seven months later on November 2, 2010. (ECF No. 11-7, p.200). Dr. Callen again diagnosed right leg sciatica, prescribed pain medication and a tapering dose of Prednisone and recommended that plaintiff seek orthopedic care. *Id.*

Dr. Callen also treated plaintiff's asthma. (ECF No. 11-7, pp.199-200). He generally prescribed inhalers for this condition. (ECF No. 11-7, p.200). An x-ray taken on June 2009, was within normal limits however, a September 2009 x-ray showed mild atelectasis (failure to inflate) in her right lung base. (ECF No. 11-7, pp.214, 216). X-rays of her chest in June and November of 2010 showed her lungs were clear with no evidence of acute pulmonary pathology. (ECF No. 11-7, pp.205-09).

On June 8, 2010, plaintiff presented at the emergency room complaining of shortness of breath. (ECF No. 11-7, pp.234, 241-42). She was admitted to hospital for two days. (ECF No. 11-7, p. 242). ; During this admission Dr. Callen prescribed intravenous medications and nebulizer treatments. *Id.* Plaintiff was released with inhaler and pain medications prescribed. *Id.*

She returned to the emergency room almost a year later, in May 2011, with complaints of a cough and chest pain. (ECF No. 11-8, p.339). Although she did not appear to be wheezing, she was given a nebulizer treatment and admitted to the hospital. (ECF No. 11, pp.339-40).

Plaintiff also complained of headaches. (ECF No. 11-7, pp.213, 217). A CT scan was performed on May 17, 2009, with normal results. (ECF No. 11-7, p.217). A later September 2009, CT scan revealed parasinusitus (chronic sinusitis). (ECF No. 11-7, p.213).

Dr. Callen also treated plaintiff for anxiety with anti-anxiety medication. (ECF No. 11-7, p.203). He did not refer her to a mental health specialist. *Id.*

On June 8, 2010, Dr. Callen completed a form describing his opinion of plaintiff's limitations. (ECF No. 11-7, pp.309-14). He opined that plaintiff had an inability to sit, stand, or walk for more than 15 minutes at a time and one hour each in an eight-hour workday. (ECF No. 11-7, p.310). He also indicated that plaintiff could never reach overhead, had significant limitations in using her hands and could never use either foot for the operation of foot controls. (ECF No. 11-7, p.311).

On February 16, 2011, Dr. Callen tendered a written opinion to disability specialist Theary Long. (ECF No. 11-7, pp.290-91). In this letter, Dr. Callen noted that plaintiff's medical history included a "severely ruptured disc . . . requiring narcotic medication"; "very severe asthma attacks"; and periodic "severe anxiety attacks". (ECF No. 11-7, p.290). He stated that examination of her back revealed "back pain that is not too terribl[e] today but I have seen her really incapacitated by back pain." (ECF No. 11-7, p.291). He found her deep tendon reflexes present in her knee and ankles although she had some weakness in the extensors and flexors of her right toe. *Id.* Dr. Callen noted that plaintiff had "very bad asthma" and "very significant back pain" and opined that she was "disabled by the combination of her three illnesses." *Id.* Finally, Dr. Callen opined that plaintiff had severe anxiety attacks which would diminish her ability to work. *Id.*

In a February 23, 2011, follow-up letter to the disability specialist, Dr. Callen noted that plaintiff had mild muscle spasm, was able to flex about 45 degrees from vertical, had some diminished sensation over her right leg with no motor loss and a normal gait. (ECF No. 11-7, p.303). He concluded that "[t]here was no loss of ambulatory capabilities. However, I have seen her at times incapacitated where she could barely walk." *Id.*

William Morton, Psy.D., examined plaintiff on March 31, 2011. (ECF No. 11-7, pp.305-07). After a thorough examination, Dr. Morton diagnosed post-traumatic stress disorder, panic disorder without agoraphobia, and adjustment disorder with depressed mood. (ECF No. 11-7, p.307). He

assigned plaintiff a Global Assessment of Functioning (GAF) of 50-55[1], indicating moderate symptoms. *Id.* He however, concluded that plaintiff had mild mental limitations in all areas. (ECF No. 11-7, p.307).

On April 7, 2011, Alan Ketelhohn, M.D., a State Agency physician, reviewed plaintiff's medical records and assessed her physical residual functional capacity (RFC). (ECF No. 11-3, pp.79-81). He opined that plaintiff retained the ability to occasionally lift and carry 20 pounds; frequently lift or carry 10 pounds; stand and/or walk for a total of 4 hours; sit (with normal breaks), for a total of 6 hours in an 8-hour work day; had unlimited ability to push or pull; could climb ramps/stairs frequently, ladders/ropes/scaffolds occasionally; had unlimited balance and could stoop, kneel, crouch or crawl frequently. (ECF No. 11-3, pp.79-80). He further opined that plaintiff had no manipulative, visual, or communicative limitations but did have environmental limitations to extreme cold/heat and moderate exposure to fumes, odors, gases or poor ventilation. (ECF No.11-3, pp.80-81).

Donald Glasco, M.D., a State Agency mental health expert, reviewed plaintiff's medical records, noted that she had no periods of decompensation and assessed the severity of her mental limitations as causing only mild limitations in social functioning, concentration, persistence or pace and not restricting her activities of daily living. (ECF No. 11-3, pp.77-78).

**3.   ALJ's Decision:**

After considering all of the evidence in the record, the ALJ using the five step sequential evaluation, found plaintiff not disabled. (ECF No. 11-2, pp.23-37). Specifically, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 25, 2010; that she had severe impairments of asthma, a spinal disorder and pain related to her spinal disorder. (ECF No. 11-2, p.25).

---

[1] Global assessment of functioning" or GAF score is a 100-point scale used to assess an individual's overall functioning and his ability to carry out the daily activities of living. A GAF rating between 51 and 60 indicates moderate symptoms or impairments in social, occupational, or school functioning. DSM–IV–TR at p.34.

The ALJ detailed why she found plaintiff's medically determinable mental impairments of post-traumatic stress disorder, panic disorder and affective mood disorder did not singly or in combination cause more than minimal limitation in plaintiff's ability to perform basic mental work activities and were therefore nonsevere. (ECF No. 11-2-pp.26-28). Thus the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (ECF No. 11-2, pp.28-29).

In addition, the ALJ found plaintiff not entirely credible. (ECF No. 11-2, p.32). The ALJ supported that finding stating that plaintiff's work history showed that she had worked only sporadically prior to her alleged onset date which, lead the ALJ to question whether her lack of employment was in fact due to her medical impairments. *Id.* The ALJ noted plaintiff's testimony that she twice stopped working to providing care for her children, indicated that her lack of employment was unrelated to her allegedly disabling impairments. *Id.* Further the ALJ noted that plaintiff's responses at the hearing were generally evasive and vague, leaving an impression that she was being less than candid. *Id.* Finally the ALJ noted that plaintiff had not provided any convincing details regarding factors that precipitated her allegedly disabling symptoms and instead claimed that her symptoms were present constantly or all the time. *Id.*

The ALJ elucidated her comprehensive reasoning for finding that plaintiff had the residual functional capacity (RFC), to perform sedentary work except that she be allowed to sit or stand alternately at will (provided she is not off task more than 10% of the work period); could never climb ladders, ropes or scaffolds, could frequently climb stairs/ramps, balance, stoop, crouch, kneel and crawl; could frequently reach overhead with both arms; and should avoid concentrated exposure to extreme cold and heat and even moderate exposure to environmental irritants. (ECF No. 11-2, p.29).

The ALJ then determined that plaintiff is a younger individual as defined by 20 C.F.R. 416.963, with a limited education, an ability to communicate in English and unable to perform her past relevant work. (ECF No. 11-2, p.35).

The ALJ found plaintiff retained the residual functional capacity (RFC) to perform sedentary work that allowed for an option to sit or stand; to change position at will provided she was not off task more than 10% of the time; some postural limitations, some restrictions on reaching, and some environmental limitations. (ECF No. 11, p.29). In coming to that conclusion, the ALJ accorded great weight to the opinions of Dr. Morton, Dr. Glasco, and Dr. Ketelhohn and afforded little weight to Dr. Callen's opinions, detailing her reasons for so doing. (ECF No. 11, pp.31-34).

The ALJ noted that plaintiff's daily activities supported this RFC and considering the vocational expert's testimony and plaintiff's age, education, work experience and RFC, determined that there are jobs (such as check cashier, appointment clerk and telephone solicitor) which exist in significant numbers in the national economy that plaintiff can perform. (ECF No. 11-2, pp.36-37).

The ALJ then concluded plaintiff is therefore not disabled. *Id.* Finally, in making this finding the ALJ identified and reconciled a potential conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) regarding the sit/stand option of the suggested jobs. *Id.*

### III.   DISCUSSION

**A.   Standard of Review:**

An individual seeking disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5). The Act defines "disabled" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A).

To meet this burden, a plaintiff must provide medical evidence of both, an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and of the severity of that impairment during the time of his/her alleged disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§404.1512(b) and 416.912(b). A plaintiff is disabled only if his impairments are of such severity that s/he is not only unable to do his/her previous work but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. §423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§404.1520 and 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988). In reviewing a decision of the Commissioner, the court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005). The court may neither re-weigh the evidence nor substitute its judgment where it might have reached a different conclusion. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

**B.    Issues:**

1.    ALJ's weight of the treating physician's opinion:

Plaintiff argues that the ALJ improperly discounted plaintiff's treating physician Dr. Callen's opinion and improperly picked through the evidence relying on those portions that supported a finding of non-disabled. (ECF NO. 14, pp.24-45).

Defendant responds that plaintiff's sparse medical record indicates that although plaintiff received treatment for various impairments, including a spinal injury, headaches, asthma, and anxiety, her care was routine. (ECF No. 15, p.3). Defendant contends that the ALJ accorded the appropriate weight to the state medical experts and plaintiff's treating physician because Dr. Callen's opinion was

inconsistent with the objective evidence, not consistent with the treatment he prescribed, related to mental health limitations outside his specialty, relied heavily on plaintiff's subjective complaints and was contradicted by other medical opinions in the record. (ECF No. 15, pp.7-14).

Under what has become known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. §404.1527(d)(2). In deciding the weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

To determine this, the ALJ:

"must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."

*Id.* (quotations omitted).

Even if the treating physician's opinion is not entitled to controlling weight, a treating source's medical opinions may still be entitled to deference and must be weighed using all of the factors provided in § 404.1527. *Id.* Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301.

It is well established that an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* at 1300 An ALJ who completely rejects the opinion must then give specific legitimate reasons for so doing. *Id.* at 1301.

In this instance the ALJ gave a lengthy explanation for according little weight to plaintiff's treating physician. (ECF No. 11-2, pp.34-35). She stated that Dr. Callen's opinion was less persuasive because it contrasted sharply with both the other evidence in the record which revealed only sporadic conservative treatment for the allegedly disabling impairments, and the remaining medical opinions, none of which found disabling impairments. *Id.* The ALJ further opined that Dr. Callen's course of treatment was inconsistent with the level of disability he was reporting; that his mental health assessment was outside his area of expertise and was at variance with those of qualified mental health examiners; that Dr. Callen relied heavily on plaintiff's subjective reports of symptoms and seemed to uncritically accept as true most if not all plaintiff reported. *Id.*

Further plaintiff alleges that the ALJ improperly cherry-picked the evidence to support her conclusion. (ECF Nos. 14, pp.36-40; 16, pp.4-21). Plaintiff's allegation appears entirely based on the weight the ALJ gave plaintiff's GAF score assigned by Dr. Morton. The ALJ explained "that a GAF score can be of limited value when determining disability. It is an assessment of the claimant's current level of functioning utilizing a generic scale. I give greater weight to his actual opinion [and that of Dr. Glasco, the State agency medical consultant both of which] found no more than mild or minimum limitation in all mental categories." (ECF No. 11-2, pp.32-33).

In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole. 20 C.F.R. § 404.1527(d)(4). In this instance, the ALJ set forth legitimate reasons for assigning low weight to Dr. Morton's GAF score including: the specific

functional limitations he found as a result of his examination of plaintiff; Dr. Glasco's concurrence with those limitations; and plaintiff's lack of medical mental health treatment. (ECF No. 11-2, pp.32-33).

I therefore find the ALJ's weighting of various medical opinions is properly supported by substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir, 2007)(Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence).

2.   ALJ's credibility finding:

Plaintiff alleges that the ALJ erred in her credibility finding because her explanation was not linked to specific evidence in the record. (ECF Nos. 14, pp.46-49; 16, pp.22-24). Defendant responds to the contrary stating that the ALJ properly noted the inconsistencies in the record that undermined plaintiff's credibility. (ECF No.15, pp.14-16).

As stated in detail above, the ALJ found that plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC. (ECF No.11-2, pp.29-30). In summary, the ALJ found plaintiff lacked credibility because the objective medical record failed to support plaintiff's claims of serious disabling impairment with respect to her asthma, her back impairment and her headaches. (ECF No. 11-2, pp.30-31).

Additionally, the ALJ noted that she found plaintiff's claims inconsistent with her described daily activities and with her work history which included plaintiff's testimony that she stopped working for child-care rather than medical reasons. (ECF 11-2, pp.31-32). Finally the ALJ opined that plaintiff had a "generally unpersuasive appearance and demeanor while testifying at hearing. The claimant's responses while testifying were evasive and vague at times, and left the impression that the claimant may have been less than entirely candid." (ECF No.11-2, p.32).

Consequently I find that the ALJ's determination that plaintiff's testimony was not credible is supported by substantial evidence and free of legal error. While plaintiff argues essentially, that the ALJ

should have weighed the evidence differently, this court is not at liberty to re-weigh the evidence but is limited to determining whether the correct legal standards were applied and the decision is supported by substantial evidence in the record. After a complete review of the record, I find the ALJ's findings are supported by substantial evidence in the record and she applied the correct legal standards.

## IV    CONCLUSION

For the reasons detailed above, the Commissioner's December 21, 2012, final decision is AFFIRMED.

The In Court hearing previously set for October 23, 2015, is hereby VACATED.

IT IS SO ORDERED

DATED this 20th day of October, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge